UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL J. SMOLEN, JR.,

Plaintiff,

-against-

BRIAN FISCHER, Commissioner N.Y.S. Department of Correctional Services, and ADA PEREZ, Superintendent Downstate Correctional Facility,

Defendants.

12 Civ. 1856 (PAC) (AJP)

**REPORT AND RECOMMENDATION**

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Paul A. Crotty, United States District Judge:**

Pro se plaintiff Samuel J. Smolen, Jr. brings this § 1983 action alleging violations of his federal constitutional rights by defendants Commissioner Brian Fischer and Superintendent Ada Perez arising out of alleged conditions of his confinement and failure to take corrective action to improve those conditions at the Downstate Correctional Facility. (Dkt. No. 2: Compl. at 2B-2C.) Presently before the Court is defendants' summary judgment motion. (Dkt. No. 41: Notice of Motion.) For the reasons stated below, defendants Fischer and Perez's summary judgment motion should be GRANTED.

## FACTS

The facts underlying this dispute are set forth in my prior Report and Recommendation, Smolen v. Fischer, 12 Civ. 1856, 2012 WL 3609089 (S.D.N.Y. Aug. 23, 2012), familiarity with which is assumed.

On March 10, 2009, Smolen "was an inmate incarcerated at Downstate Correctional Facility ('Downstate')." (Dkt. No. 46: Defs. Rule 56.1 Stmt. ¶ 1; Dkt. No. 2: Compl. at 2A; Dkt. No. 43: Lee Aff. Ex. B: Smolen Dep. at 25-27.) Defendant Brian Fischer "was the Commissioner of the New York State Department of Corrections and Community Supervision ('DOCCS')"; defendant Ada Perez was Downstate's Superintendent, since October 2008. (Defs. Rule 56.1 Stmt. ¶¶ 2-3; Compl. at 1; Dkt No. 44: Fischer Aff. ¶ 1; Dkt. No. 45: Perez Aff. ¶ 1.)

On March 10, 2009, Smolen was keeplocked at Downstate in cell 2B26. (Defs. Rule 56.1 Stmt. ¶¶ 4-5; Compl. at 2A; Perez Aff. Ex. B: 3/10/09 Unusual Incident Report.) Due to "disciplinary reasons," keeplocked inmates at Downstate remain in their cells to eat their meals "while other inmates are escorted by the housing officer to the messhall." (Defs. Rule 56.1 Stmt. ¶¶ 5-6; Perez Aff. ¶ 7 & Ex. B: 3/10/09 Unusual Incident Report; Lee Aff. Ex. B: Smolen Dep. at 25-26.) "When there is no housing officer in the complex, there is an officer assigned to be a rover who patrols the housing units and checks in on" keeplocked inmates. (Defs. Rule 56.1 Stmt. ¶ 6; Perez Aff. ¶ 7.)

At 7:37 a.m. on March 10, 2009, Smolen remained in his cell as the housing officer escorted the non-keeplocked inmates in the unit "to morning chow." (Defs. Rule 56.1 Stmt. ¶ 5; Perez Aff. Ex. B: 3/10/09 Unusual Incident Report; Lee Aff. Ex. B: Smolen Dep. at 25-26.) At approximately 7:48 a.m., a "fire alarm for cell 2B27 was activated and officers responded" to Housing Unit 2B. (Defs. Rule 56.1 Stmt. ¶ 7; Perez Aff. Ex. B: 3/10/09 Unusual Incident Report.) Smolen and two other keeplocked inmates were "immediately evacuated from their cells and taken to the gym." (Defs. Rule 56.1 Stmt. ¶ 7; Lee Aff. Ex. C: Smolen Med. Records.) From there, they were "taken to the facility infirmary," where they were kept overnight and released the next day "in

stable condition." (Defs. Rule 56.1 Stmt. ¶ 7; Lee Aff. Ex. B: 3/10/09 Unusual Incident Report; Lee Aff. Ex. C: Smolen Med. Records.)

By 7:55 a.m., correction officers extinguished the fire and ventilated the housing unit. (Defs. Rule 56.1 Stmt. ¶ 7; Perez Aff. Ex. B: 3/10/09 Unusual Incident Report.) Through an investigation, Downstate's fire/safety officer, Corrections Officer Clyburn, was able to determine that the fire was accidentally "started in cell 2B27 by a wick made out of paper which was burning in or near the window." (Defs. Rule 56.1 Stmt. ¶ 8; Perez Aff. ¶ 6 & Ex. B: 3/10/09 Unusual Incident Report.) The storm window was destroyed by the fire. (Defs. Rule 56.1 Stmt. ¶ 8; Perez Aff. Ex. B: 3/10/09 Unusual Incident Report.)

If a fire occurs at Downstate, correction personnel must follow the procedures outlined in DOCCS' Directives 4902 and 4060. (Defs. Rule 56.1 Stmt. ¶ 9; Perez Aff. Ex. A: Directives 4902 & 4060.) According to Directive 4902, the fire/safety officer is responsible for investigating a fire, "compil[ing] the necessary paperwork including [a] fire and safety report," and presenting the report to the Deputy Superintendent of Security. (Defs. Rule 56.1 Stmt. ¶ 10; Perez Aff. ¶ 5 & Ex. A: Directive 4902.) Directive 4060 also requires the submission of each report "to the Fire and Safety Coordinator, a member of the executive team at DOCCS." (Defs. Rule 56.1 Stmt. ¶ 11; Perez Aff. Ex. A: Directive 4060; Fischer Aff. ¶ 4.) The DOCCS Commissioner only receives a fire and safety report if "the safety issue is of extreme importance such as an evacuation." (Defs. Rule 56.1 Stmt. ¶ 12; Fischer Aff. ¶ 4.)

The fire/safety officer complied with Directive 4902 for the March 10, 2009 fire at Downstate. (Defs. Rule 56.1 Stmt. ¶ 10; Perez Aff. ¶ 5.) Supt. Perez electronically reviewed and signed off on the March 10, 2009 fire and safety report. (Defs. Rule 56.1 Stmt. ¶ 13; Perez Aff. ¶ 6 & Ex. B: 3/10/09 Unusual Incident Report.)

No prior fires involving the Downstate storm windows were reported dating back to 2007.[1/] (Defs. Rule 56.1 Stmt. ¶ 14; Perez Aff. ¶ 8 & Ex. C: Fire & Safety Reports.) In addition, there have been no "complaints regarding the flammability or toxicity of the storm windows at Downstate." (Defs. Rule 56.1 Stmt. ¶ 16; Perez Aff. ¶ 9.) Commissioner Fischer submitted an affidavit swearing that he "has no personal knowledge or recollection of a fire that occurred at Downstate on March 10, 2009." (Defs. Rule 56.1 Stmt. ¶ 12; Fischer Aff. ¶¶ 4-5.)

In Downstate Housing Unit 2B, there are two windows per cell – "an exterior glass window and an interior storm window." (Defs. Rule 56.1 Stmt. ¶ 15; Perez Aff. ¶ 10.) "The storm windows were installed at Downstate prior to 2008." (Defs. Rule 56.1 Stmt. ¶ 15; see Perez Aff. ¶ 9.) The glass windows can only be opened with a knob. (Defs. Rule 56.1 Stmt. ¶ 15; Perez Aff. ¶ 10.) While some windows have knobs in place, others do not, but can be opened by a housing officer. (Defs. Rule 56.1 Stmt. ¶ 15; Perez Aff. ¶ 10.) Both Commissioner Fischer and Supt. Perez submitted affidavits stating that each has no prior "personal knowledge of the construction or installation of the storm windows at Downstate," nor of any alleged flammability of the storm windows. (Defs. Rule 56.1 Stmt. ¶ 17; Perez Aff. ¶ 9; Fischer Aff. ¶ 6.)

Smolen alleges that he sustained injuries as a result of the fire, including "severe chest pains," "difficulty breathing," "subsequent-repeated nightmares about dying in a fire," "chronic pulmonary disorders," and "post traumatic stress disorder." (Compl. ¶ 3.) Smolen alleges that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.

---

[1/] "The fire and safety reports are only kept for five years." (Defs. Rule 56.1 Stmt. ¶ 14; Perez Aff. ¶ 8 & Ex. C: Fire & Safety Reports; see also Perez Aff. Ex. A: Directives 4902 & 4060.)

(Compl. at 2B-2C.) Smolen alleges that defendants Perez and Fisher knew of "the hazard of those windows . . . from previous fires." (Compl. at 2B, 2C; Lee Aff. Ex. B: Smolen Dep. at 63-69, 71.)

## ANALYSIS

## I. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof. See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Instead, the non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . . is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.

2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2/] The Court draws all inferences in favor of the non-moving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or

---

[2/] See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

unnecessary will not be counted." Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must extend extra consideration to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[3/] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[4/]

---

[3/] See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[4/] See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001) (Chin, D.J.), aff'd, 31 F. App'x 740 (2d Cir. 2002).

## II. DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

### A. Legal Standards for Personal Involvement in a § 1983 Cause of Action

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); Warheit v. City of N.Y., 271 F. App'x 123, 126 (2d Cir. 2008); Dyno v. Vill. of Johnson City, 240 F. App'x 432, 434 (2d Cir. 2007), cert. denied, 552 U.S. 1310, 128 S. Ct. 1874 (2008).[5/]

In 1995, the Second Circuit held that:

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

---

5/ See, e.g., Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Gill v. Tuttle, 93 F. App'x 301, 302 (2d Cir. 2004); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093, 125 S. Ct. 971 (2005); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Robles v. Khahaifa, No. 09CV718, 2012 WL 2401574 at *8 (W.D.N.Y. June 25, 2012); Allan v. Woods, No. 05-CV-1280, 2008 WL 724240 at *5 (N.D.N.Y. Mar. 17, 2008) ("Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability."); Tafari v. Annets, 06 Civ. 11360, 2008 WL 2413995 at *10 (S.D.N.Y. June 12, 2008) (Peck, M.J.), report & rec. adopted, 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008), aff'd, 363 F. App'x 80 (2d Cir.), cert. denied, 130 S. Ct. 3475 (2010); Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1109 (S.D.N.Y. 1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions.").

> custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d at 873.[6] However, in 2009, the Supreme Court held that:

> In a § 1983 suit . . . —where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title not withstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose . . . liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

Ashcroft v. Iqbal, 556 U.S. at 677, 129 S. Ct. at 1949. Although the Second Circuit has not weighed in on what remains of Colon after Iqbal, several decisions in this district have concluded that by specifically rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," id., Iqbal effectively nullified several of the classifications of supervisory liability enunciated by the Second Circuit in Colon. See, e.g., Bellamy v. Mount Vernon Hosp., 07 Civ. 1801, 2009 WL 1835939 at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third Colon categories pass Iqbal's muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other Colon categories impose the exact types of supervisory liability that Iqbal eliminated—situations where the supervisor knew of and acquiesced to a constitutional

---

[6] Accord, e.g., Ziemba v. Clark, 167 F. App'x 831, 833 (2d Cir. 2006); Samuels v. Selsky, 166 F. App'x 552, 556 (2d Cir. 2006); Patterson v. Cnty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d at 127; Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003); Hernandez v. Keane, 341 F.3d at 145; Wright v. Smith, 21 F.3d at 501; see also, e.g., Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

violation committed by a subordinate."), aff'd, 387 F. App'x 55 (2d Cir. 2010).[7] While Colon permitted supervisory liability in situations where the supervisor knew of and acquiesced in a constitutional violation committed by a subordinate, these post-Iqbal district court decisions reason that Iqbal's "active conduct" standard imposes liability only where that supervisor directly participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred.

These decisions may overstate Iqbal's impact on supervisory liability. Iqbal involved allegations of intentional discrimination. Ashcroft v. Iqbal, 556 U.S. at 666, 129 S. Ct. at 1942. Where the alleged constitutional violation involved "invidious discrimination in contravention of the First and Fifth Amendments," Iqbal held that "plaintiff must plead and prove that the defendant acted with discriminatory purpose," whether the defendant is a subordinate or a supervisor. Id. at 676-77, 129 S. Ct. at 1948-49. It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the

---

[7] See, e.g., Vann v. Fischer, 11 Civ. 1958, 2012 WL 2384428 at *5 & n.9 (S.D.N.Y. June 21, 2012) ("In the Second Circuit, personal involvement in intentional discrimination is shown where 'the defendant participated directly in the alleged constitutional violation, [or] . . . the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom . . . '.[] These are only the first and third scenarios listed in Colon in which personal involvement might be found, but the others have been invalidated by the Supreme Court's holding in Iqbal . . . ."); James v. Orange Cnty. Corr. Facility, 09 Civ. 7226, 2011 WL 5834855 at *4 (S.D.N.Y. Nov. 18, 2011) ("There has been considerable division among the district courts of the Second Circuit as to whether Iqbal abrogates several factors of the Colon test and if so to what extent." (citing cases)); Joseph v. Fischer, 08 Civ. 2824, 2009 WL 3321011 at *14 (S.D.N.Y. Oct. 8, 2009) ("[U]nder Iqbal, . . . [a] defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right."); Newton v. City of N.Y., 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in Ashcroft v. Iqbal.").

Constitution." Id. at 677, 129 S. Ct. at 1949. Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in Colon may still apply.[8]

**B. Application of the Legal Standard**

Here, Smolen presents allegations of defendants' personal involvement that are conclusory and speculative, at best.

**1. Superintendent Perez**

Smolen alleges that Supt. Perez was on actual or constructive notice of the hazard posed by the storm windows in the event of a fire, due to previous fires involving these windows at Downstate. (See page 5 above.) Smolen bases these allegations of previous fires on his conversations with unnamed Downstate staff, who he asserts claimed that "there were previous fires resulting from the fact that those storm windows were made of polycarbon." (Dkt. No. 43: Lee Aff. Ex. B: Smolen Dep. at 52-53, 69; see Dkt. No. 42: Defs. Br. at 7.) Smolen asserts that Supt. Perez

---

[8] See, e.g., Alli v. City of N.Y., 11 Civ. 7665, 2012 WL 4887745 at *6 (S.D.N.Y. Oct. 12, 2012) ("[W]here the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in Colon should still apply."); Inesti v. Hicks, 11 Civ. 2596, 2012 WL 2362626 at *11 (S.D.N.Y. June 22, 2012) (Peck, M.J.), report & rec. adopted, 2012 WL 3822224 (S.D.N.Y. Sept. 4, 2012); Hodge v. Sidorowicz, 10 Civ. 0428, 2011 WL 6778524 at *16 (S.D.N.Y. Dec. 20, 2011), report & rec. adopted, 2012 WL 701150 (S.D.N.Y. Mar. 6, 2012) (Crotty, D.J.); Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) (Peck, M.J.); see also, e.g., Chao v. Ballista, 630 F. Supp. 2d 170, 178 n.2 (D. Mass. July 1, 2009) (noting that the "state of mind required to make out a supervisory claim under the Eighth Amendment—i.e., deliberate indifference—requires less than the discriminatory purpose or intent that Iqbal was required to allege in his suit . . . ."); Michael Avery et al., Police Misconduct: Law & Litigation § 4:5 (2009) (discussing the impact of Iqbal on supervisor liability in § 1983 and Bivens actions); cf. Caiozzo v. Koreman, 581 F.3d 63, 66 (2d Cir. 2009) (the standard is the same for Eighth Amendment and Fourteenth Amendment deliberate indifference claims).

had constructive knowledge of the storm windows' potential danger because of her access to past fire and safety reports that would have resulted from these alleged fires and complaints and grievances regarding the windows. (Lee Aff. Ex. B: Smolen Dep. at 65-66; see Defs. Br. at 7.) Smolen therefore claims that Supt. Perez violated his rights "because she failed to replace the storm windows and missing window knobs needed to open the cell windows and did not ensure that the housing unit would not be left unattended when the housing officer escorted the rest of the unit to the messhall." (See pages 4-5 above; Defs. Br. at 6; Dkt. No. 2: Compl. at 2C.)

The storm windows were installed at Downstate prior to 2008, i.e., prior to when Perez became Downstate's Superintendent. (See page 4 above.) Supt. Perez has sworn that she has no personal knowledge of the storm windows' construction, makeup, or installation. (See page 4 above.) There is no evidence of any reports or grievances involving fires affecting the storm windows between 2007 and the March 10, 2009 fire. (See page 4 above.) Thus, prior to March 10, 2009, contrary to Smolen's ipse dixit, Supt. Perez was not on notice from any reports that the storm windows could potentially pose a danger to the health and safety of the inmates in the event of a fire.[9/]

After "discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case." Davis v. Kelly, 160 F.3d 917, 921 (2d Cir. 1998); see also, e.g., Neitzke v. Williams, 490 U.S. 319, 324 n.2, 109 S. Ct. 1827, 1831 n.2 (1989) (affirming Court of Appeals' finding that plaintiff in a § 1983 action "alleged no

---

9/ Smolen also has failed to offer any admissible evidence demonstrating that the storm windows present a fire hazard, other than his "own personal belief that polycarbon windows are illegal 'because they're highly flammable and would cause a danger' based upon his work in construction prior to his incarceration in 1985 and the pictures of the burnt storm window in the adjoining cell at Downstate." (Lee Aff. Ex. B: Smolen Dep. at 47-51; Defs. Br. at 7-8.)

personal involvement on the part of . . . three defendants . . . and that these defendants' prison jobs did not justify an 'inference of personal involvement'"); Colon v. Coughlin, 58 F.3d 865, 873-74 (2d Cir. 1995) (affirming summary judgment where plaintiff alleged no facts supporting "that [the Commissioner] either knew or should have known of the events of which [plaintiff] complains"); Wright v. Smith, 21 F.3d 496, 501-02 (2d Cir. 1994) (Commissioner had no actual notice of plaintiff's confinement conditions and a letter addressed to the governor was insufficient to constructively notify Commissioner); Williams v. Smith, 781 F.2d 319, 324 (2d Cir. 1986) (defendant "documented his assertion of no personal involvement" and plaintiff "offers no concrete evidence to the contrary"); Perkins v. Napoli, No. 09-CV-6302, 2011 WL 6148988 at *6-7 (W.D.N.Y. Dec. 12, 2011) (Superintendent not personally involved where prior to plaintiff's alleged assault, plaintiff had "no problems with any of the corrections-officer[s]" and, therefore, "never alerted [Superintendent] that he was in danger from" them); Walker v. Pataro, 99 Civ. 4607, 2002 WL 664040 at *15 (S.D.N.Y. Apr. 23, 2002) (Peck, M.J.) (summary judgment for defendant who asserted he was unaware of plaintiff's original grievance until the lawsuit and plaintiff did not submit any contrary evidence); Torres v. Mazzuca, 246 F. Supp. 2d 334, 339-40 (S.D.N.Y. 2003) (dismissing complaint against Superintendent due to lack of personal involvement where plaintiff did not plead that Superintendent participated in the alleged violation or had actual or constructive knowledge of "any danger to [plaintiff] prior to the [i]ncident that could place particular responsibility on [Superintendent] for protecting" him); Santiago v. City of N.Y., 98 Civ. 6543, 2000 WL 1532950 at *7 (S.D.N.Y. Oct. 17, 2000) (granting summary judgment where there was no evidence that supervisor was "notified of a constitutional violation by report or appeal" or that he "knew or had reason to know at the time of the event"); Calloway v. Richter, No. 97-CV-0671, 1998 WL 34301462 at *2-5 (W.D.N.Y. Dec. 30, 1998) (granting summary judgment to defendants where

defendants testified that they never received the alleged letter that would have put defendants on notice nor was the letter "entered on any of the regularly kept logs, . . . no[r] contained in his inmate file"); Saar v. U.S. Dep't of Justice, 705 F. Supp. 999, 1006 (S.D.N.Y. 1989) (where "Plaintiff has not contradicted defendant" supervisor's assertion that "he had no power to act to remedy the violation," § 1983 claim against that defendant dismissed).

The storm windows were installed before Perez became Superintendent of Downstate and there were no reports of any prior fires impacting the storm windows. Supt. Perez had neither actual nor constructive knowledge of any alleged danger to inmates' health and safety posed by the storm windows, and therefore she was not personally involved. Accordingly, defendants' summary judgment motion as to Supt. Perez should be GRANTED.

**2. Commissioner Fischer**

Smolen alleges that Commissioner Fischer had actual or constructive notice of the allegedly hazardous storm windows because of his supervisory role as the DOCCS Commissioner, and because as a member of the executive team, Commissioner Fischer would have known of the potential danger because "the deputy commissioner for facility operations who . . . ha[s] a responsibility to review all fire and safety reports" would have brought this information to Commissioner Fischer's attention. (See page 5 above; Dkt. No. 42: Defs. Br. at 9, quotations omitted; Dkt. No. 43: Lee Aff. Ex. B: Smolen Dep. at 68-69.) Smolen claims that the Commissioner is the "chief executive officer of the state prison system" and thus "has to be made aware of all the potential dangerous problems that exist in the state prisons." (Lee Aff. Ex. B: Smolen Dep. at 71; see Defs. Br. at 9.)

Because the fire/safety officer only submits a fire and safety report to the DOCCS Commissioner if "the safety issue is of extreme importance," there is no evidence that Fischer

received a fire and safety report regarding the March 10, 2009 fire. (See pages 3-4 above.) Fischer has sworn that he has no "personal knowledge or recollection of a fire that occurred at Downstate on March 10, 2009." (See page 4 above.) In any event, the issue is whether Commissioner Fischer was aware, prior to the March 10, 2009 fire at Downstate, of hazards from fire burning the storm windows. Downstate's fire records, however, are devoid of any prior fires involving the storm windows. (See page 4 above.) Thus, even if Commissioner Fischer received every report of fires at Downsate from 2007 until March 10, 2009 – and there is no evidence that he did – he would not have been on notice of any fire hazards from the storm windows. Thus, Commissioner Fischer had no actual or constructive notice of the alleged flammability of the storm windows.

To survive a motion for summary judgment, Smolen cannot just echo the legal standard for supervisory liability, but rather must submit evidence, which he has failed to do. See, e.g., Patterson v. Cnty. of Oneida, 375 F.3d 206, 229 (2d Cir. 2004); Vogelfang v. Capra, 10 Civ. 3827, --- F. Supp. 2d ----, 2012 WL 832440 at *5-6 (S.D.N.Y. Mar. 13, 2012) (dismissing claim where plaintiff failed to show personal involvement and had named Commissioner Fischer, Supt. Perez and others "as defendants solely by virtue of their supervisory positions in either the chain of command or the administrative review system for inmate disciplinary proceedings"); Fernandez v. Callens, No. 06-CV-0506, 2010 WL 4320362 at *7 (W.D.N.Y. Oct. 29, 2010) (summary judgment for defendants where plaintiff's "conclusory allegations are clearly insufficient to create a question of fact" regarding defendants' involvement); Bridgewater v. Taylor, 698 F. Supp. 2d 351, 359-60 (S.D.N.Y. 2010) (no personal involvement where plaintiff made the "bare assertion" that defendant was the supervisor of another defendant and "that '[i]t is presumed that a properly trained or closely supervised prison guard would follow the instruction of his supervisor'"); Bush v. Horn, 07 Civ. 3231, 2010 WL 1712024 at *4-5 (S.D.N.Y. Mar. 2, 2010) (dismissing complaint where allegations

of Commissioner's knowledge and personal involvement in prison asbestos problem were entirely conclusory and solely based on fact that defendant was the highest DOC official and "therefore was responsible . . . for everything that occurred at [the correctional facility] during his tenure"); Bell v. Arnone, 455 F. Supp. 2d 232, 235 (W.D.N.Y. 2006) (conclusory allegations that defendant was on duty as supervisor at the time, knew about the wrong and did nothing to remedy it were insufficient to defeat summary judgment); Cherry v. Edwards, 01 Civ. 7886, 2005 WL 107095 at *10-11 (S.D.N.Y. Jan. 18, 2005) (granting summary judgment where plaintiffs' only allegations were that Commissioner was the Superintendent's supervisor and thus "should have 'investigate[d] the situation do [sic] to the fact that[] the situation ha[d] already caused imm[i]nent danger in the past'"), aff'd, 155 F. App'x 529 (2d Cir. 2005); Richardson v. Hillman, 201 F. Supp. 2d 222, 230-31 (S.D.N.Y. 2002) ("Plaintiff has not set forth any facts that can be construed to personally involve Commissioner Goord. The only connection that [Commissioner] has to this case is his supervisory role over the entire State's Department of Correctional Services. He is not alleged to have participated in any way in the disciplinary actions of which plaintiff complains. The law is clear that merely being a supervisor, absent a showing of any other involvement, is not sufficient to hold the individual liable."); Prince v. Edwards, 99 Civ. 8650, 2000 WL 633382 at *6 (S.D.N.Y. May 17, 2000) (Chin, D.J.) (dismissing complaint for lack of personal involvement since plaintiff alleged defendant was on notice based solely on his position as superintendent and "not on [his] actual or personal knowledge of or direct involvement" in the alleged violations).

Accordingly, defendants' summary judgment motion as to Commissioner Fischer should be GRANTED.

## CONCLUSION

For the reasons stated above, defendants Perez and Fischer's summary judgment motion (Dkt. No. 41: Notice of Motion) should be GRANTED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.[10] Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Crotty (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human

---

[10] If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, plaintiff should request copies from defense counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
November 27, 2012

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies by ECF to: Samuel J. Smolen, Jr. (Mail)
Julia H. Lee, Esq.
Judge Paul A. Crotty